```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION

RODNEY M. PATTON,                   )
                                    )
                    Plaintiff,      )
                                    )
     v.                             )    No.  07 C 1761
                                    )
COUNTY OF COOK, et al.,             )
                                    )
                    Defendants.     )
```

                          MEMORANDUM ORDER

 Although Rodney Patton ("Patton") is a nonlawyer, he is no stranger to the federal courts.[1] This time Patton sues Cook County, its Sheriff Tom Dart and several persons affiliated with the Cook County Department of Corrections ("County Jail") and its Cermak Health Service, claiming a violation of his constitutional rights under the principles established by <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976) and its numerous progeny. For the reason stated in this memorandum order, both Patton's Complaint and this action are dismissed, so that his contemporaneous Motion for Appointment of Counsel is denied as moot.

 To begin with, however, this Court must address the procedure established by 28 U.S.C. §1915[2] that applies to all prisoners who seek to proceed in forma pauperis, as Patton has done here. Patton's contemporaneous In Forma Pauperis

---

 [1] According to the printout received from this District Court's staff attorneys responsible for the initial processing of prisoner litigation, this is his seventh lawsuit filed in this District Court.

 [2] All further references to Title 28's provisions will simply take the form "Section--."

Application and the attached printout reflecting all transactions in his inmate trust fund account at the County Jail show that the average monthly deposits during his 3-1/2 month tenure there calculate out to $61.43, so that the initial partial filing fee that he must pay comes to $12.29 (see Section 1915(b)(1)).

Because the account was insufficient as of the March 15 date of the printout to cover that amount, the trust fund officer at County Jail (to whom a copy of this memorandum order is being sent) is ordered to remit that payment on account as soon as the trust fund account is sufficient for that purpose, remitting that initial fee directly to the Clerk of Court ("Clerk"):

>Office of the Clerk
>United States District Court
>219 South Dearborn Street
>Chicago IL 60604

>Attention: Fiscal Department

Both the initial payment and all future payments shall clearly identify Patton's name and the 07 C 1761 case number assigned to this action.

As for the remainder of the $350 filing fee, which Patton is also ordered to pay pursuant to Section 1915(b)(2), the trust fund officer at County Jail (or at any other correctional facility where Patton may hereafter be confined) is authorized to collect monthly payments from his trust fund account in an amount equal to 20% of the preceding month's income credited to the account. Monthly payments collected from the trust fund account

shall be forwarded to the Clerk each time the amount in the account exceeds $10 until the full $350 filing fee is paid.

With that said, this Court turns to the initial screening called for by Section 1915A(a). In that respect, although Patton asserts that he has a constitutional right to receive physical therapy for what he describes as "a back problem located at T10, T11, T12, S1, and S5 which were seen on x-ray at Cermak Health Services," what the Complaint further alleges conclusively defeats his claim as a matter of law. Even on the assumption that Patton's "back problem" constitutes a "serious medical need" within the scope of <u>Estelle</u> and other cases applying its doctrine,[3] what the Complaint reveals is at most a difference of opinion between two doctors who are affiliated with Cermak.

In that regard Dr. Ed Fowler is said to have ordered physical therapy after examining Patton, while Dr. Nagib Ali, whom Patton identifies in the Complaint as "the head medical doctor for Division One," also examined Patton thereafter and prescribed instead a regimen of push-ups and sit-ups as well as "prescrib[ing] noprisyn for pain."[4] This Court of course

---

[3] This Court makes that assumption arguendo in accordance with the general requirement that a plaintiff's allegations be credited together with all reasonable favorable inferences, when coupled with the generous lens for viewing such pro se complaints as dictated by <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972)(per curiam).

[4] In those respects Patton's Complaint refers to two matters as to which he states "(note attached)" but has not in fact submitted any supporting documentation:

3

expresses no view as to the correctness of either of those professional evaluations--what is clear instead under the caselaw is that even if Dr. Ali's second opinion is medically wrong, the worst that is involved here is arguable medical malpractice--<u>not</u> the deliberate indifference to serious medical needs that is required to establish a constitutional violation.

Accordingly, for purposes of any claim under 42 U.S.C. §1983, as contrasted with a possible state law claim for malpractice (as to which this Court also expresses no view), Patton's Complaint "fails to state a claim upon which relief may be granted" (Section 1915A(b)(1)). Hence this Court dismisses both the Complaint and this action (<u>id</u>.). As stated at the outset, that dismissal moots Patton's request for the appointment of counsel.

_____
Milton I. Shadur
Senior United States District Judge

Date: April 6, 2007

---

> 1. Patton's grievance stating that he wanted physical therapy and
>
> 2. an appeal board ruling that "sided with the plaintiff" as to Dr. Fowler's order just referred to in the text.

As to the first of those items, the grievance alone would add nothing to the mix--the question is still whether the failure to provide such therapy ran afoul of the <u>Estelle</u>-established constitutional standard. And as for the second, whatever that may mean (which is somewhat unclear, but will again be viewed in Patton's favor), Patton acknowledges that the response to his grievance was "referred to divisional physician," so that the point next made in the text as to Dr. Ali (who <u>was</u> the divisional physician) still applies.

4